**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTY CRAIG,** | ) | **CASE NO.: 3:01CV7517** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DAVID D. DOWD** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE J.** |
| | ) | **LIMBERT** |
| **LIMA CITY SCHOOLS BOARD** | ) | |
| **OF EDUCATION, et al.,** | ) | **DEFENDANT LIMA CITY** |
| | ) | **SCHOOLS BOARD OF** |
| **Defendants.** | ) | **EDUCATION'S MOTION FOR** |
| | ) | **PARTIAL SUMMARY** |
| | ) | **JUDGMENT** |

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Defendant Lima City Schools Board of Education moves this Court for an order granting it partial summary judgment with regard to the allegations asserted against it in the second, third, fifth, seventh, eighth and ninth causes of action of Plaintiff's Fourth Amended Complaint.  A memorandum in support of this Motion is attached hereto and incorporated herein.

Respectfully submitted,

/s/ Krista K. Keim
David Kane Smith (0016208)
Krista K. Keim (0067144)
BRITTON, SMITH, PETERS &
  KALAIL CO., L.P.A.
4700 Rockside Road, Suite 540
Summit One Building
Cleveland, Ohio 44131-6814
Telephone:  (216) 642-0323
Facsimile:  (216) 642-0747
Email:  dsmith@ohioedlaw.com
Email:  kkeim@ohioedlaw.com

*Attorneys for Defendant, Lima City Schools*
*Board of Education*

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**STATEMENT OF ISSUES TO BE DECIDED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

**SUMMARY OF ARGUMENTS PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

**MEMORANDUM IN SUPPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    **I.**      **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    **II.**     **STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **III.**    **LAW AND ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          **A.**     **Standard of Review.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          **B.**     **The Board of Education is Not Liable under 42 U.S.C. §1983.** . . . . . . 5

          **C.**     **The Board of Education is not Liable under Title IX.** . . . . . . . . . . . 11

          **D.**     **This Court Should Decline Supplemental Jurisdiction.** . . . . . . . . . . 14

          **E.**     **Even If this Court Were to Exercise Supplemental**
                **Jurisdiction over Plaintiff's State Law Claims,**
                **Defendant Board Is Entitled to Judgment with**
                **Regard to Plaintiff's Fifth, Seventh, and Ninth**
                **Causes of Action.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                  1.     The Board of Education is immune from
                          Plaintiff's claim of willful/reckless
                          supervision of Defendant Martinez. . . . . . . . . . . . . . . . . . . . . . 15

                    2.     The Board of Education cannot incur liability
                          for Defendant Martinez's failure to report his
                          own behavior pursuant to O.R.C. §2151.421. . . . . . . . . . . . . . . 17

i

        3.      <u>The Board of Education cannot incur liability</u>
            <u>for the acts or omissions of Bruce Hodges.</u> . . . . . . . . . . . . . . . . . 20

**IV.**    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ii

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432 (6th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) . . . . . . . . . . 4

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . 4, 5

*Blair v. City of Cleveland*, 148 F. Supp. 2d 894 (N.D. Ohio 2000) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Campbell v. Burton*, 92 Ohio St. 3d 336, 750 N.E.2d 539 (Ohio 2001) . . . . . . . . . . . . . . . . . . . 18

*Cater v. City of Cleveland*, 697 N.E.2d 610 (Ohio 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) . . . . . . . . . . . 4, 5

*cf. Board of County Comm'rs v. Brown,* 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*City of Canton v. Harris,* 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) . . . . . . 6

*Collins v. City of Harker Heights,* 503 U.S. 115 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Daughenbaugh v. City of Tiffin,* 150 F.3d 594 (6th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Doe v. Claiborne County,* 103 F.3d 495 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 5-8, 10, 11, 13

*Ellithorp v. Barberton City Sch. Dist. Bd. of Educ.*, No. 18029, 1997 WL 416333
    (Ohio App. 9th Dist. July 9, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20
    L.Ed.2d 569 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gaff v. FDIC*, 814 F.2d 311 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

iii

*Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Hankins v. The Gap, Inc.*, 84 F.3d 797 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*In re Meridia Products Liability Litigation,* 328 F.Supp.2d 791 (N.D. Ohio 2004) . . . . . . . . . . 4

*Klemencic v. Ohio State Univ.*, 263 F.3d 504 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89
      L.Ed.2d 538 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Monell v. Department of Social Servs.*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

*Morse v. Regents of the Univ. of Colorado,* 154 F.3d 1124 (10th Cir.1998) . . . . . . . . . . . . . . . 12

*Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244 (6th Cir. 1996) . . . . . . . . . . . 15

*Nashville, Chattanooga & St. Louis  Ry. Co. v. Browning,* 310 U.S. 362, 60 S.Ct. 968,
      84 L.Ed. 1254 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Thelma D. v. Board of Educ.,* 934 F.2d 929 (8th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . 12

*Waters v. City of Morristown,* 242 F.3d 353 (6th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Williams v. Paint Valley Local Sch. Dist.*, ___ F. 3d ___, 2005 Fed. App. 0118P
      (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilson v. Stark County. Dep't of Human Servs.,* 639 N.E.2d 105 (Ohio 1994) . . . . . . . . . . . . 17

*Yates v. Mansfield Bd. of Educ.*, 102 Ohio St.3d 205 808 N.E.2d 861 (Ohio 2004) . . . . . . . 18, 19

## STATUTES

20 U.S.C. § 1681 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. §1367(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, vi, 1, 5, 7, 8, 11, 13

O.R.C. 2744.02(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

O.R.C. Chapter 2744 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

O.R.C. §2151.421 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19

O.R.C. §2151.421(A)(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

O.R.C. §2744.01(C)(2)C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

O.R.C. §2744.01(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

O.R.C. §2744.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

O.R.C. §2744.02(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

O.R.C. §2744.02(B)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Title IX of the Education Amendments of 1972 . . . . . . . . . . . . . . . . . . . . . . . . . . v, vi, 1, 11-13

## **OTHER AUTHORITIES**

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.      Whether the Board of Education is liable under 42 U.S.C. §1983 where Plaintiff cannot show (1) a pattern of sexual abuse of students by the Board of Education's employees, (2) notice or constructive notice on the part of the Board, (3) the Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

2.      Whether the Board of Education is liable under Title IX for *quid pro quo* and hostile environment sexual harassment where the Board had no notice of *quid pro quo* harassment and an appropriate person did not act with deliberate indifference to information concerning sexual abuse.

3.      Whether this Court should exercise its supplemental jurisdiction over Plaintiff's state claims against the Board of Education where her federal claims against the Board must be dismissed.

4.      Whether the Board of Education is immune from Plaintiff's claim that it willfully and/or recklessly supervised Defendant Martinez where the Board is statutorily immune from intentional tort claims.

5.      Whether the Board of Education can incur liability for the failure of an employee to report his own abuse of Plaintiff, or for the failure of a non-employee to report the abuse of Plaintiff.

## SUMMARY OF ARGUMENTS PRESENTED

1.      The Board of Education is not liable under 42 U.S.C. §1983 because Plaintiff cannot show (1) a pattern of sexual abuse of students by the Board of Education's employees, (2) notice or constructive notice on the part of the Board, (3) the Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the Board's custom was the "moving force" or direct causal link in the constitutional deprivation.  [Plaintiff's Fourth Amended Complaint, second and eighth causes of action.]

2.      The Board of Education is not liable under Title IX for *quid pro quo* sexual harassment because the Board had no notice of *quid pro quo* harassment.  The Board is not liable under Title IX for hostile environment sexual harassment because an "appropriate person" who received information about "an affair" between Plaintiff and Defendant Martinez through one of Plaintiff's classmates did not act with deliberate indifference.  [Plaintiff's Fourth Amended Complaint, third cause of action.]

3.      This Court should decline to exercise its supplemental jurisdiction over Plaintiff's state claims against the Board of Education because her federal claims against the Board must be dismissed.

4.      The Board of Education is immune from Plaintiff's claim that it willfully and/or recklessly supervised Defendant Martinez because it is statutorily immune from intentional tort claims.  [Plaintiff's Fourth Amended Complaint, ninth cause of action.]

5.      The Board of Education cannot incur liability for the failure of an employee to report his own abuse of Plaintiff because the employee was not acting in his "professional capacity" and the damages alleged were not proximately caused by the Board.  The Board of Education cannot incur liability for the failure of  non-employee to report child abuse because the damages alleged were not proximately caused by the Board. [Plaintiff's Fourth Amended Complaint, fifth and seventh causes of action.]

<u>MEMORANDUM IN SUPPORT</u>

## I.    INTRODUCTION

The allegations in this case, though tragic, simply do not give rise to liability on the part of Defendant Lima City Schools Board of Education (hereinafter "Board of Education" or "Board"). Plaintiff Christy Craig alleges she was sexually abused by her teacher, Defendant Jorge Martinez; however, she also alleges that her relationship with Martinez was warm and consensual, and that they took steps to keep it a secret.  Unfortunately, they were successful until one of Plaintiff's classmates (in whom Plaintiff had confided her relationship with Martinez) presented information to a member of the Board that eventually led to Martinez's arrest.

There can be no Board liability under 42 U.S.C. § 1983 where Plaintiff cannot show a custom, with the force of law, of deliberate indifference to a pattern of sexual abuse by its employees.  Likewise, Plaintiff cannot meet her burden to show Board liability under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* because the Board had no knowledge of *quid pro quo* harassment and because school officials were not deliberately indifferent to the alleged abuse.

This Court should decline to exercise its supplemental jurisdiction over Plaintiff's state claims against the Board because the federal claims alleged against the Board must be dismissed. Even if this Court determined to exercise its supplemental jurisdiction, the Board is still entitled to summary judgment with regard to the fifth, seventh and ninth causes of actions in Plaintiff's Fourth Amended Complaint.

1

## II.    STATEMENT OF FACTS

Martinez was employed by the Board of Education in August 1988[1] (Deposition of Jorge Martinez p. 7.)  His employment ended on June 11, 2001, when he resigned shortly after pleading guilty to  a misdemeanor charge of contributing to the delinquency of a minor.  (Martinez Depo p. 117; Deposition of John McEwan p. 39.)

At that time, the Board's superintendent was John McEwan.  McEwan served as superintendent for the Board from July, 2000 to June, 2003, when his contract was not renewed. (McEwan Depo pp. 6-7 and Errata Sheet.)

Shortly after McEwan began his position, on September 25, 2000, he was given some "sensitive information" by the Board president that she had learned from a female student the night before.  (*Id.* 8-11, 14-15 and Exh. C) The superintendent subsequently obtained a written statement, as well as electronic mail messages, from that female student, who alleged Plaintiff and Martinez had engaged in sexual activity.  (McEwan Depo pp. 13-15.)  Superintendent McEwan contacted, or caused his assistant superintendent to contact, the Allen County Children's Services Board on November 1, 2000, to report Martinez and the alleged abuse he perpetrated on Plaintiff.  (McEwan Depo pp. 16-17, 37.)  On November 2, 2000, Martinez was arrested by Lima City police.  (Martinez Depo pp. 112-113.)

Martinez admits to kissing Plaintiff in 1999 when she was a freshman, and to sexual touching in October 2000 when Plaintiff was a junior.  (Martinez Depo pp. 12, 39-41.) Plaintiff alleges she and Martinez had a consensual (albeit criminal) sexual relationship that began in the spring of 1999,

---

[1]  The deposition transcripts of Jorge Martinez, John McEwan and Christy Craig have been filed with this Court.

2

during her freshman year.  At that time, Plaintiff was a student in Martinez's algebra I class.  She alleges Martinez kissed her while they were alone in his classroom after school hours during a "tutorial session" open to all high school students.  (Deposition of Christy Craig pp. 10-12.)  Shortly thereafter, Plaintiff states she and Martinez had sexual intercourse for the first time.  (Craig Depo p. 22.)  She claims they had sex in his classroom almost daily until the end of the school year.  (Craig Depo p. 16.)  They did not see each other during the summer, but Plaintiff claims their sexual activity resumed the first day of school when she returned for her sophomore year.  (Craig Depo pp. 37, 39.)  She claims their relationship continued in the same fashion as during her freshman year, but that she and Martinez would also have sexual intercourse in his van on the way home from school.  (Craig Depo pp. 37, 39.)  Plaintiff was a student in Martinez's algebra II class that year, and attended his math tutorial sessions after school.  (Craig Depo pp. 38-39.)  She alleges Martinez impregnated her and that she had an abortion in the fall of 1999.  (Craig Depo pp. 73-74.)

Plaintiff did not see Martinez during the summer between her sophomore and junior year, and did not take any courses from Martinez during her junior year.  (Craig Depo pp. 43-44.)  Nevertheless, she claims they continued to have a sexual relationship with Martinez during her junior year until Martinez was arrested on November 2, 2000.  (Craig Depo pp. 43-44, 36-37.)

Plaintiff admits she did not tell anyone of her alleged relationship with Martinez other than two classmates.[2]  (Craig Depo pp. 71-72.)  She admits no one directly observed the sexual activity, mostly because she and Martinez would close drapes, lock the door and turn the lights off when they

---

[2]  Plaintiff also states she told Bruce Hodges, a non-employee, of her pregnancy and identified Martinez as the father.

3

would have sex in the classroom.  (Craig Depo pp. 17, 45, 127.)  She believed Martinez loved her

and planned to leave his wife upon Plaintiff's graduation from high school.  (Craig Depo p. 73.)

On the day Martinez was arrested, Plaintiff was interviewed by Lima police officers.  (Craig

Depo at pp. 95-6 and at Exhibit C)  She initially denied having any sexual contact with Martinez,

but eventually told them that one instance of sexual intercourse occurred in October 2000.  (Craig

Depo at pp. 100-01 and at Exhibit C).

## III.    LAW AND ARGUMENT

### A.    Standard of Review.

The standard for ruling upon motions for summary judgment was recently articulated by this

Court in *In re Meridia Products Liability Litigation,* 328 F.Supp.2d 791, 796-97 (N.D. Ohio 2004):

> Summary judgment is appropriate when the evidence submitted shows "that
> there is no genuine issue as to any material fact and that the moving party is entitled
> to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In seeking summary judgment,
> the moving party bears the initial burden of showing an absence of a genuine issue
> of material fact as to an essential element of the nonmoving party's case. *Waters v.
> City of Morristown,* 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its
> resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150
> F.3d 594, 597 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,
> 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding whether the moving party
> has met this burden, a court must view the facts and all inferences drawn from them
> in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398
> U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, "a complete
> failure of proof concerning an  essential element of the nonmoving party's case
> necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S.
> 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Once the moving party satisfies this burden, the burden shifts to the
> nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec.
> Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538
> (1986). It is not sufficient for the nonmoving party merely to show that there is some
> existence of doubt as to the material facts. *See id.*

4

A factual dispute stops summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. The factual dispute also must be genuine. The facts must be such that if proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Under this standard, the Board is entitled to judgment as a matter of law as set forth herein.

**B.      The Board of Education is Not Liable under 42 U.S.C. §1983.**

Section 1983 provides in pertinent part:

Every person, who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects . . . any citizens of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983.  Plaintiff alleges the Board is liable under section 1983 for a violation of her bodily integrity.  (Fourth Amended Complaint ¶19.)  Specifically, Plaintiff alleges Defendant Martinez violated her right to bodily integrity through sexual abuse.  The Board of Education, however, cannot be liable under section 1983 on a theory of *respondeat superior*.  *Monell v. Department of Social Servs*., 436 U.S. 658, 691(1978).  Rather, Plaintiff must show that the "Board *itself* is the wrongdoer."  *Doe v. Claiborne County,* 103 F.3d 495, 507 (6th Cir. 1996) (emphasis original) (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 122 (1992)).  Plaintiff's claim against the Board is fatally flawed because she cannot establish that the Board is itself responsible for the violation.

In accordance with *Monell,* the Board cannot be found liable unless Plaintiff can "establish that an *officially executed policy, or the toleration of a custom* within the school district *leads to, causes, or results in* the deprivation of a constitutionally protected right." *Id.* (emphasis added) (citing *Monell,* 436 U.S. at 690-91, 98 S.Ct. at 2035-36). In *Doe v. Claiborne County*, the Sixth Circuit explained the significant burden placed upon plaintiffs in demonstrating the existence of a policy or custom, as well as a causal link between the custom and alleged violation:

> A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.), *cert. denied,* 510 U.S. 826, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." *Nashville, Chattanooga & St. Louis  Ry. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano,* 988 F.2d at 655.
>
> ***
>
> In addition to showing that the School Board as an entity "caused" the constitutional violation, plaintiff must also show a direct causal link between the custom and the constitutional deprivation;  that is, she must " 'show that the particular injury was incurred *because* of the execution of that policy.' " *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993) (emphasis added) (citation omitted), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). This requirement is necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell.*

*Id.* at 507-08. Here, Plaintiff's claim must fail because she essentially seeks liability solely on a theory of *respondeat superior*.

Plaintiff alleges the Board is liable under a theory of municipal "inaction" based upon the acts or omissions of individuals who are not policymakers. To establish section 1983 liability under an inaction theory, Plaintiff must demonstrate the following:

6

(1) the existence of a clear and persistent pattern of sexual abuse by school employees;
(2) notice or constructive notice on the part of the School Board;
(3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction;  and
(4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe v. Claiborne County,* 103 F.3d at 508 (citing *City of Canton v. Harris,* 489 U.S. 378, 388-89 (1989), and *Thelma D. v. Board of Educ.,* 934 F.2d 929, 932-33 (8th Cir.1991)).  First, Plaintiff has adduced no evidence that would show a clear and persistent *pattern* of sexual abuse by school *employees*.  She alleges she was abused by Martinez.  The inquiry should end here, in accordance with the Sixth Circuit's opinion in *Doe*:  "[t]here is an analytical distinction between being deliberately indifferent as to one particular incident, and having a "policy" of always being deliberately indifferent to unconstitutional actions."  *Id.* at 508 (finding no liability under section 1983 against a board of education whose employee had been accused of abusing numerous students prior to the plaintiff).

Also, Plaintiff cannot meet the next element.  She has not shown notice or constructive notice on the part of Board of Education prior to Martinez's arrest on November 2, 2000.  Plaintiff erroneously alleges the Board of Education had actual knowledge of her sexual abuse and was deliberately indifferent to her right to bodily integrity during the period of time between September 25, 2000 to November 2, 2000.  (Fourth Amended Complaint ¶53.)  Essentially, Plaintiff asserts that the information given to the Board president and former superintendent from a female classmate

7

constitutes notice on the part of the Board of Education.  Any information learned by these individuals, however, cannot be imputed to the Board as an entity and final policymaker.[3]

Even if the Board of Education had actual knowledge as of September 25, 2000, the Sixth Circuit recently stated in a section 1983 "inaction" case that "*Doe* makes clear that the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a **single instance** to infer a policy of deliberate indifference." *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) (emphasis added).  The plaintiff in *Thomas* alleged police used excessive force in shooting a homeowner during a domestic dispute, and that the municipality had a custom of deliberate indifference toward the use of such force.  Here, Plaintiff alleges she was abused by Defendant Martinez during October 2000 as a result of deliberate indifference by Lima school officials between September 25, 2000 and November 2, 2000.  Plaintiff points to the potential misconduct of school employees in this one instance to support her claim against the Board of Education.  For the same reason the plaintiff in *Thomas* was not successful, Plaintiff Craig's claim must also fail:  "The danger in [Thomas'] argument is that they are attempting to infer a municipal-wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard.  This path to municipal liability has been forbidden by the Supreme Court."  *Thomas*, 398 F.3d at 433-34 (citing *Monell,* 436 U.S. at 694, *cf. Board of County Comm'rs v. Brown,* 520 U.S. 397, 410 (1997)).

---

[3]  Plaintiff has not alleged that any school employee, other than Defendant Martinez, is liable under section 1983.  The standard for showing individual liability under section 1983 is not the same as proving municipal liability through an official policy or custom.  If the standard were the same, the Board could impermissibly be held liable under *respondeat superior*.

8

Plaintiff also alleges Defendant Board was deliberately indifferent, generally, to students' Fourteenth Amendment right to be free from sexual abuse at the hands of a public school employee through "a custom of ignoring objective signs and symptoms of abuse and thereby failing to take action to reduce and eliminate the effects of and exposure of their students to the abuse." (Fourth Amended Complaint ¶18.)  Plaintiff's claim is inherently deficient because there can be no direct causal link between an alleged failure to reduce the effects of abuse and actual abuse by school teachers.  More importantly, Plaintiff does not allege the Board itself had notice of sexual abuse. Rather, she alleges school officials, such as teachers, should have known about the abuse that she and Martinez took "precautions" to keep secret.[4]  For instance, Plaintiff testified that she and Martinez would engage in sexual activity in Martinez's classroom with the lights off and door locked so that anyone in the hallway would think he was not there and that the room was empty.  (Craig Depo p. 127.)  She also stated she received tutoring in math from Martinez frequently in the presence

---

[4]

Q.      Weren't both of you a little afraid with all of the sexual conduct going on that you might be detected?
A.      Yes, but we took very much [sic] precautions in making sure that things didn't look to obvious.
Q.      I am just thinking as you testified, what if [Principal] Mitch Black came knocking on that door when you two were in there; did you give that any thought?
A.      The lights would be off and the door would be closed, so it looked like [Marinez] would be down eating lunch or down with a parent. There were a lot of knocks at the door and he never checked. The lights were off and the door was locked so they thought he must be down eating lunch or with a parent.
Q.      What if Mrs. Hedges or someone else saw you go into that room to be able to talk Mr. Black or anybody else?
A.      They would have to show proof.
Q.      You both weren't that scared that that would occur or didn't believe it would occur?
A.      I guess not.
Q.      Okay.  Or the pleasure overcame the worry?
A.      That would be it too.
(Craig Depo pp. 127-28.)

of other students, and that she would often store her books in his classroom. (*Id*. pp. 11-12, 65.)

Martinez confirmed that she kept her books in his classroom as did many other students. (Martinez

Depo pp. 86-7.) While Plaintiff alleges that an office secretary for whom Plaintiff served as an office

aid during her freshman year frequently called over the school's public address system when Plaintiff

failed to report to the office (Fourth Amended Complaint ¶18 (7)), Plaintiff also explained at her

deposition that Martinez would respond to the secretary with a legitimate excuse: that Plaintiff was

receiving assistance in math. (Craig Depo pp. 54-56.) Even if this Court accepted Plaintiff's

allegations as true, she still has not demonstrated that the Board *itself* had notice or constructive

notice of a clear pattern of sexual abuse by its employees, and that the Board, "as an official

policymaking body, had a 'custom' that reflected a deliberate, intentional indifference to the sexual

abuse of its students." *Doe v. Claiborne County,* 103 F.3d at 508.

The allegations and issues in the *Doe* case are similar in some important respects to those

asserted in this case. Jane Doe was sexually abused by her high school physical education coach

during her freshman year. The abuse began with the teacher fondling her while they rode together

on a school bus and led to sexual intercourse. He was eventually prosecuted, charged with five

counts of statutory rape, and gave an "*Alford* plea" to one count of statutory rape. Unlike Martinez,

the teacher in *Doe* had been accused of sexual misconduct prior to abusing the plaintiff. Specifically,

the teacher had been accused of reaching under a girl's blouse, and, after that, the school board was

informed that the teacher was being investigated by the county Department of Health and Human

Services for nine other instances of alleged sexual misconduct with students. The teacher reached

a settlement agreement with the DHHS, and the school board re-hired him. Jane Doe was then

abused by the teacher. Despite Doe's allegations concerning her board of education's notice of

10

sexual abuse by its physical education teacher and its egregious failure to act, the Sixth Circuit determined that Doe had not demonstrated a custom of deliberate indifference on the part of the school board, and upheld a lower court's decision to grant the board summary judgment on her section 1983 claim.

Here, the Board of Education had not received numerous complaints from students and/or the local children's services board concerning Defendant Martinez.  Nor did the Board make a hiring decision concerning Martinez in light of such complaints.  Plaintiff's allegations concerning Board liability in this case clearly do not rise to the level of those in the *Doe* case.  More importantly, she has not demonstrated (1) a pattern of sexual abuse of students by the Board's employees, (2) notice or constructive notice on the part of the Board, (3) the Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the Board's custom was the "moving force" or direct causal link in the constitutional deprivation.  Therefore, the Board is entitled to judgment as a matter of law with regard to Plaintiff's section 1983 claim.  (See Fourth Amended Complaint, second and eighth causes of action.)

### C.    The Board of Education is not Liable under Title IX.

As with section 1983, a school board cannot be liable under Title IX for the acts of its employees under a theory of *respondeat superior.  Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998).   A school board may only be liable under Title IX for a teacher's harassment of a student if a school official with supervisory authority over the teacher has actual knowledge of the harassment and is deliberately indifferent to it.  *See Klemencic v. Ohio State Univ.*, 263 F.3d 504 (6th Cir. 2001).

11

For a plaintiff to proceed on a claim against a school board under Title IX, she must establish a *prima facie* case "showing that:  [a] she was subjected to *quid pro quo* sexual harassment or a sexually hostile environment;  b) she provided actual notice of the situation to an 'appropriate person,'  who was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination;  and c) the institution's response to the harassment amounted to 'deliberate indifference.'"  *Klemencic v. Ohio State Univ.*, 263 F.3d 504,  510 (6th Cir. 2001) (citing *Morse v. Regents of the Univ. of Colorado,* 154 F.3d 1124, 1127-28 (10th Cir.1998) and *Gebser,* 524 U.S. at 289-91).

Here, Plaintiff never complained to any school official about harassment.  (Craig Depo pp. 28, 40, 72.)  She alleges she informed Bruce Hodges that she was pregnant and that Martinez was the father; however, Hodges was not an employee of the Board of Education and, therefore, his knowledge cannot be attributed to the Board.  Of course, even if Hodges had been a Board employee, he was not an "appropriate person" such that the Board can be said to have had actual knowledge. The Supreme Court explained that an "appropriate person" is, "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination."  *Gebser*, 524 U.S. at 290.  The Court further stated that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."  Hodges, therefore, even if he had been employed by the Board as a counselor (and Defendant vehemently denies that he was), was not an appropriate person under this Title IX jurisprudence.  *Accord Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163 (3rd Cir. 2002) (holding that a guidance counselor who dealt with students and handled abuse referrals was

12

nevertheless not an appropriate person for purposes of Title IX liability in a teacher-on-student abuse case).

Despite the fact that she tried to keep the conduct a secret, Plaintiff alleges the Board received actual knowledge when the former superintendent and Board president learned of the sexual relationship from one of Plaintiff's classmates.  Plaintiff does not allege the former superintendent failed to take any action in response to the "actual notice"; rather, she alleges McEwan failed to act immediately.  (Fourth Amended Complaint ¶¶23-24.)  McEwan learned from the Board president that Plaintiff and Martinez allegedly had had "an affair" which may have lead to a pregnancy and abortion.  (McEwan Depo at Exh. 1.)  Upon learning about the allegations from the school Board president, McEwan asked that the student put her allegations in writing, and that she retrieve electronic mail messages she claimed she possessed that would substantiate her claims.  In addition, the former superintendent contacted legal counsel.  (Defendant Board's Answers to Plaintiff's Interrogatories No. 9., attached hereto as Exhibit 1)  The superintendent informed, or caused the assistant superintendent to inform, the Allen County Children's Services board on November 1, 2000.  (McEwan Depo pp. 16-17, 37.)  On November 2, 2000, Martinez was arrested.  He was assigned to home and informed, verbally, that he was not to return to school.  (Martinez Depo pp. 115.)

"Deliberate indifference" has "substantially the same meaning" in both section 1983 and Title IX claims.  *Williams v. Paint Valley Local Sch. Dist.*, ___ F. 3d ___, 2005 Fed. App. 0118P (6th Cir. 2005).  The Sixth Circuit has held that deliberate indifference "does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual

13

abuse." *Doe v. Claiborne County*, 103 F.3d at 508. By investigating the matter, contacting legal counsel, and making a report to ACCS, the former superintendent was not deliberately indifferent.

Also, Plaintiff alleges *quid pro quo* harassment by Martinez in the form of "a sexual outlet for [Martinez] while she was rewarded with A's and B's in the classes [Martinez] taught without having to perform homework, take the quizzes or tests as the answers to same were provided by the teacher...." (Fourth Amended Complaint ¶21.) Plaintiff alleges that the harassment in this form occurred during her freshman (1998-99) and sophomore (1999-2000) school years, when Martinez taught her algebra I and II, respectively. Plaintiff, however, does not allege that any school official had actual knowledge of the alleged harassment in this form. In fact, Plaintiff alleges the superintendent did not have actual knowledge of sexual conduct until "on or about September 25, 2000" (Fourth Amended Complaint ¶22) – i.e., during the first semester of her junior year. The Board simply cannot be liable for *quid pro quo* harassment of which it had no knowledge.

**D.     This Court Should Decline Supplemental Jurisdiction.**

This Court should not exercise jurisdiction over Plaintiff's state claims because of the doctrine of supplemental jurisdiction, partly codified at 28 U.S.C. §1367. The statute states, in pertinent part:

> The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
> ***
> (3)     the district court has dismissed all claims over which it has original jurisdiction....

28 U.S.C. §1367(c).

The Sixth Circuit has applied this rule and has refused to exercise supplemental jurisdiction over pendent state law claims where the federal claims were dismissed. *Hankins v. The Gap, Inc.*,

14

84 F.3d 797 (6th Cir. 1996); *see also Gaff v. FDIC*, 814 F.2d 311 (6th Cir. 1987) (reversing a district court's decision to exercise supplemental jurisdiction over state claims after the federal claim was dismissed).  In *Hankins*, the Court held that the plaintiff failed to show how any substantial savings in judicial resources would be gained that outweighed interest in avoiding unnecessary resolution of state law issues.  *Id.*  Also, in *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244 (6th Cir. 1996), the Court held that a district court's determination to resolve a plaintiff's state claims was an abuse of discretion because no "unusual circumstances" existed.

Defendant Board of Education is entitled to judgment as a matter of law with regard to Plaintiff's federal claims; therefore,  this Court should decline to exercise its supplemental jurisdiction over Plaintiff's pendent state law claims.

> **E.**    **Even If this Court Were to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims, Defendant Board Is Entitled to Judgment with Regard to Plaintiff's Fifth, Seventh, and Ninth Causes of Action.**
>
> > 1.    <u>The Board of Education is immune from Plaintiff's claim of willful/reckless supervision of Defendant Martinez.</u>

In her ninth cause of action, Plaintiff alleges Defendant Board is liable for the intentional tort of "willful or reckless supervision" of Defendant Martinez.  The Board, however, is defined as a political subdivision in Ohio Revised Code §2744.01(F), and, therefore, is generally not liable in damages in a civil action for the death or loss to a person or property under Ohio's Political Subdivision Tort Liability Act, O.R.C. Chapter 2744.  See O.R.C. §2744.02(A)(1) ("Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the

15

political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.")

The provision of a system of public education is specifically defined as a governmental function.  O.R.C. §2744.01(C)(2)C.  As such, Defendant Board is immune from liability under O.R.C. §2744.02(A)(1) unless the alleged acts or omissions fall within one of the five exceptions to the Board's general statutory immunity.[5] *Cater v. City of Cleveland*, 697 N.E.2d 610, 615

---

[5] At the time of the alleged willful and reckless supervision, the five statutory potential exceptions to the Board's blanket immunity were:

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1)  Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to persons or property caused by the **negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets** when the employees are engaged within the scope of their employment and authority.

\*    \*    \*

(2)  Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by the **negligent performance of acts by their employees with respect to proprietary functions** of the political subdivisions.

(3)  Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by their **failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance,** except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.

(4)  Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property that is caused by the **negligence of their employees and that occurs within or on the grounds of, buildings that are used in connection with the performance of a governmental function,** including, but not limited to, office buildings and courthouses,

16

(Ohio 1998) ("The immunity afforded a political subdivision in Ohio Rev. Code 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in ... Ohio Rev. Code 2744.02(B)...."). Indisputably, no exception to immunity exists for intentional torts. In fact, "[c]ourts have consistently held that political subdivisions are immune from intentional tort claims." *Ellithorp v. Barberton City Sch. Dist. Bd. of Educ.*, No. 18029, 1997 WL 416333 (Ohio App. 9th Dist. July 9, 1997), *discretionary appeal denied*, 686 N.E.2d 273 (Ohio 1997) (citing *Wilson v. Stark County. Dep't of Human Servs.,* 639 N.E.2d 105 (Ohio 1994)).

Clearly, there can be no liability against the Board for the causes of action set forth against it in Plaintiff's Complaint because the Board is immune and no exception to that immunity applies. Defendant Board is entitled to judgment as a matter of law with regard to Plaintiff's intentional tort claim.

        2.      The Board of Education cannot incur liability for Defendant Martinez's failure to report his own behavior pursuant to O.R.C. §2151.421.

Plaintiff makes the absurd claim that the Board is liable because Martinez himself failed to report his own abuse of Plaintiff. Had the alleged incidents in this case occurred *after* April 9, 2003,

---

but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

     (5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when **liability is expressly imposed upon the political subdivision by a section of the Revised Code**, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. **Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or, because of a general authorization that a political subdivision may sue and be sued.**

O.R.C. §2744.02 (emphasis added).

17

Plaintiff could not even attempt to claim liability under this theory.  For incidents that occurred *prior* to April 9, 2003, when the current version of O.R.C. Chapter 2744 went into effect, an exception to a political subdivision's general immunity may exist where liability is imposed by another section of the Revised Code, including a criminal penalty such as the one contemplated in O.RC. §2151.421 for the failure to report child abuse or neglect.[6]  *See Campbell v. Burton*, 92 Ohio St. 3d 336, 750 N.E.2d 539 (Ohio 2001).  Board liability, however, for the failure of a perpetrator to self-report is simply not contemplated by statute or the Ohio Supreme Court.

Ohio Revised Code §2151.421(A)(1)(a) states:

> No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the public children services agency or a municipal or county peace officer ....

Section (A)(1)(b) lists a "school teacher" as a person required to report any known or suspected abuse or neglect.  Martinez, though a school teacher, was not a person acting in a "professional capacity" at the time he is alleged to have been abusing Plaintiff.  For that reason alone, he cannot incur liability on behalf of the Board for failing to report his own alleged acts.

---

[6] O.R.C. §2744.02(B)(5): " In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code.  Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or, because of a general authorization that a political subdivision may sue and be sued."

Plaintiff's theory of liability contravenes the basic policy and holding behind the Ohio Supreme Court's decision in *Yates v. Mansfield Bd. of Educ.*, 102 Ohio St.3d 205 808 N.E.2d 861 (Ohio 2004). In that case, the plaintiff alleged she was forced by her teacher to perform a sexual act. She claimed the board of education was liable because, several years earlier, school officials failed to report a complaint by a different student against the same teacher. The court held that "pursuant to former R.C. 2744.02(B)(5), a board of education may be held liable when its failure to report the sexual abuse of a minor student by a teacher in violation of R.C. 2151.421 *proximately results* in the sexual abuse of another minor student by the same teacher." *Yates v. Mansfield Bd. of Educ.*, 102 Ohio St.3d at 216 (emphasis added). In other words, the *Yates* Court determined that an exception to the Board's liability applied to the facts of that case, and, therefore, the board of education could be held liable only for damages proximately caused by the failure of its officials to report the earlier allegations of abuse.

In this case, even if the (B)(5) exception to the Board's immunity applied, Plaintiff cannot show that her damages were proximately caused by the Board of Education. In *Yates*, the Ohio Supreme Court stated:

> Those persons who do not have regular contact with children and who lack the necessary training or skill to detect the symptoms of child abuse are permitted, but not required, to report their knowledge or suspicions concerning abuse or neglect. It is inconsistent with this design to hold that the statutory reporting duty runs solely to the identified abused child in the situation where the reporter to whom that child's control and protection has been entrusted also has direct control over the alleged perpetrator, other potential victims, and the environment in which they are brought together.

*Yates v. Mansfield Bd. of Educ.*, 102 Ohio St.3d at 211. It is evident the Ohio Supreme Court was stating the policy behind its decision to permit the Board to incur liability for an employee's failure

19

to report child abuse.  This policy is not served where the Board does not itself fail to report a perpetrator over whom it has control, but where the perpetrator fails to report his own acts. Accordingly, the Board of Education is entitled to judgment as a matter of law.

        3.    <u>The Board of Education cannot incur liability for the acts or omissions of Bruce Hodges.</u>

Hodges was never employed by Defendant Board of Education.  Plaintiff has adduced no evidence to show that Hodges was a mandated reporter, or that the Board had supervisory authority over him.

As indicated in Defendant Board's Answers to Plaintiff's Third and Fourth Amended Complaints, Plaintiff has failed to join a necessary party.  Plaintiff alleges Bruce Hodges had knowledge of her sexual relationship with Martinez, pregnancy and abortion.  Plaintiff was informed in January 2003 through Defendant Board's Answers to Interrogatories that Hodges was not employed by the Board.  (Defendant Board's Answers to Interrogatories No. 6)  To date, Plaintiff has not produced (and cannot produce) any evidence to show that Hodges was an employee, and has taken no steps to identify the actual employer.  Plaintiff has named neither Hodges nor the entity or organization that employed him, despite the fact both are indispensable parties, especially if Hodges is, in fact, a mandated reporter.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Board of Education is entitled to partial summary judgment with regard to the allegations asserted against it in the second, third, fifth, seventh, eighth and ninth causes of action of Plaintiff's Fourth Amended Complaint.

Respectfully submitted,

/s/ Krista K. Keim
David Kane Smith (0016208)
Krista K. Keim (0067144)
BRITTON, SMITH, PETERS &
     KALAIL CO., L.P.A.
4700 Rockside Road, Suite 540
Summit One Building
Cleveland, Ohio 44131-6814
Telephone:  (216) 642-0323
Facsimile:  (216) 642-0747
Email:  dsmith@ohioedlaw.com
Email:  kkeim@ohioedlaw.com

*Attorneys for Defendant, Lima City Schools
Board of Education*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March 2005, a copy of the foregoing document, *Defendant Lima City Schools Board of Education's Motion for Summary Judgment*, was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  Additionally, a true and correct copy shall be sent via regular U.S. mail, postage-prepaid, upon:

James P. Fisher
Fisher, Vandemark & Fisher
303 East High Street
Lima, Ohio 45801

Attorney for Defendant Jorge Martinez

/s/ Krista K. Keim
*One of the Attorneys for Defendants, Lima
City Schools Board of Education*

21