DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Christy Craig, | ) | |
| | ) | CASE NO. 3:01 CV 7517 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Lima City Schools Board of Education, et al., | ) | |
| | ) | |
| | ) | |
| Defendant(s). | ) | |

Before the Court are cross-motions for summary judgment (Doc. Nos. 66; 71), plaintiff's

motion to strike a deposition exhibit (Doc. No. 73), and defendant's motion to unseal and

disclose grand jury testimony (Doc. No. 61).  Each motion is fully briefed and ripe for

determination.


**I.  PROCEDURAL BACKGROUND**

This case was filed on September 26, 2001 by plaintiff Christy Craig, who was then a

minor identified as "Jane Doe."[1]  The complaint, brought against Lima City Schools Board of

Education ("the Board") and its former employee, Jorge Martinez ("Martinez"), seeks to "redress

---

[1] Although the case was originally captioned as "Jane Doe v. Lima City Schools BOE, et al.," the parties have long since referred to the plaintiff by her name, since she is no longer a minor.

(3:01 CV 7517)

the deprivation of the Plaintiff's constitutional rights secured by the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. [§] 1983 to redress the hostile educational environment sexual harassment . . . and the pendent state law claim."  (Doc. No. 1, ¶ 2).  The complaint alleged that Martinez, plaintiff's former teacher, had made sexual advances culminating in sexual intercourse and plaintiff's pregnancy[2] (Id., ¶¶ 9-11), in violation of her substantive due process rights and that this was made possible by the Board's tolerance of a "pervasive custom of inappropriate relationships with students by Defendant Martinez[.]"  (Id., ¶ 18).  The complaint alleged a pendent state claim of violation of the statutory duty to report set forth in Ohio Rev. Code § 2151.421.

On January 15, 2002, the Case Management Conference was conducted even though defendant Martinez had not yet made an appearance.  Deadlines were set, including a "firm jury trial date" of December 17, 2002.

On April 29, 2002, plaintiff filed a motion to stay the case, representing that, since Martinez was then serving in Kosovo on active military duty, all attempts to contact him had failed.  Plaintiff stated that even if service could be made upon family members of Martinez, the case could not effectively proceed in his absence.  On August 8, 2002, after a status report filed on July 19, 2002 suggested that Martinez was still not able to be located and/or served, the

---

[2]  The complaint also alleges that plaintiff had an abortion.  (Doc. No. 1, ¶ 9).  Two facts that are not clear from the record are (1) when plaintiff discovered that she was pregnant, and (2) when she had the abortion.  During her deposition, she testified only generally that this was during her sophomore year.  (Craig Dep. at 64).

(3:01 CV 7517)

Magistrate Judge issued a marginal order granting the motion to stay.  Service on Martinez was finally accomplished on August 13, 2002 and his answer was filed on September 24, 2002.

Following a telephone status conference, on October 25, 2002, all previous deadlines were vacated and new case management deadlines were set.  However, on February 21, 2003, Martinez filed a motion to again stay all proceedings because he had been called back to active military duty.  This motion was granted and counsel were directed to file status reports every 90 days.

On September 17, 2004, the parties filed a joint motion to lift the stay, representing that Martinez was back in the United States and had been "de-activated from the military."  (Doc. No. 40).  On September 21, 2004, the Magistrate Judge once again set new case management deadlines.  By then, the case was three years old.

On January 6, 2005, this case was reassigned to the undersigned as part of a docket realignment aimed at lifting the case burden in the Western Division of the Northern District of Ohio.  At the undersigned's direction, the Magistrate Judge proceeded with the previously-scheduled settlement conference on February 18, 2005; however, the case did not settle.

With leave, plaintiff filed her Fourth Amended Complaint (hereafter "complaint") against Lima City Schools Board of Education and Jorge Martinez.  (Doc. No. 65).  The complaint sets forth nine causes of action: (1) a claim against Martinez, under 42 U.S.C. § 1983, alleging a violation of plaintiff's fourteenth amendment substantive due process right to personal security and bodily integrity; (2) a similar § 1983 claim against the Board, alleging an official custom of ignoring such abuse of students by teachers, which amounted to deliberate indifference to

(3:01 CV 7517)

plaintiff's substantive due process right to be free from sexual abuse at the hands of a public

school employee; (3) a claim against the Board alleging quid pro quo sexual harassment and

hostile educational environment under Title IX of the Education Amendments of 1972; (4) a state

law claim against the Board under Ohio Rev. Code § 2151.421 for the school superintendent's

failure to report the abuse; (5) a state law claim against the Board under § 2151.421 for

Martinez's failure to report his abuse of the plaintiff;[3] (6) a state law claim against the Board

under § 2151.421 for the school board president's failure to report the abuse; (7) a state law

claim against the Board under § 2151.421 for the failure of a counselor, Bruce Hodges, to report

the abuse; (8) a § 1983 claim against the Board for deliberate indifference to the abuse during the

specific period of September 25, 2000 to November 2, 2000; and (9) an intentional tort claim

against the Board for willfully and recklessly failing to supervise Martinez.

Although cross-motions for partial summary judgment were timely filed in late March

2005, on April 4, 2005, plaintiff sought to stay briefing on the motions and to reopen discovery

for a limited purpose, specifically, to explore certain information which had been provided by

way of discovery supplementation after the discovery cutoff.  The Court granted the motion and

set the case for a status conference in May 2005.  Following that status conference, on May 19,

---

[3]  There is some confusion as to whether the fifth cause of action in the fourth amended
complaint is also leveled against defendant Martinez for his own failure to report.  That is not
how the Court reads the complaint.  The Court concludes that this cause of action is leveled only
against the defendant Board.  See Complaint (Doc. No. 65), ¶ 39 ("Defendant Lima City Schools
Board of Education, is liable for the failure of Martinez to report pursuant to R.C. § 2151.421 the
known or suspected abuse of plaintiff at his hands.").  See also, n. 15, infra.

4

(3:01 CV 7517)

2005, the Court set new briefing deadlines and also set the case for trial on a standby basis during

the two-week period beginning October 11, 2005.

## II.  FACTUAL BACKGROUND

Defendant Martinez was employed by the Board in August 1988.  (Martinez Dep. at 7)

(Doc. No. 67).[4]  The plaintiff was a freshman in Martinez's Algebra I class during the 1998-1999

school year and Algebra II during the 1999-2000 school year.  (Craig Dep. at 9; 38) (Doc. No.

68).  Since math was a weak subject for her, plaintiff attended after-school tutorials which

Martinez offered.  These were held in his classroom.  Sometimes other students attended;

sometimes plaintiff was alone with Martinez.  (Id. at 9-11).

Plaintiff alleges that, in the spring of her freshman year (i.e., in 1999), she was alone with

Martinez during a tutorial.  He closed the classroom door, sat close to her and then kissed her.

(Craig Dep. at 12).  She was "in shock at first" (id.) and made no response.

Without going into all the details here, plaintiff alleges that, within two weeks of that first

kiss, she and Martinez had sexual intercourse in his classroom during one of the tutorials when

they were alone.  (Craig Dep. at 22).  Thereafter, she claims they engaged in "sexual intercourse

four out of five days of each school week."  (Id. at 16; 27).[5]  She told her best friend Michelle

Boyd about the first kiss and about the intercourse.  (Id. at 28-30; 40).  These sexual contacts

---

[4]  Martinez initially worked at the junior high school/middle school and was transferred to the senior high for the school year 1997-1998.  (Martinez Dep. at 5-7).

[5]  Plaintiff also testified that, after the intercourse started, she never had to do any math homework and Martinez gave her the answers to tests so she would pass.  (Craig Dep. at 32).

5

(3:01 CV 7517)

continued for the remainder of her freshman year, all of her sophomore year, and until November

2, 2000 in her junior year, the day Martinez was arrested.[6]  In fact, plaintiff claims to have had

sex with Martinez the morning of November 2, 2000, prior to his arrest.  (Id. at 36).[7]  In addition

to having sex in his classroom, she also alleges that, beginning in her sophomore year, they

engaged in sexual intercourse in Martinez's van behind Northland Shopping Plaza on days when

he would volunteer to drive her home from school.  (Id. at 37).  Martinez denies ever having

intercourse; but he admits that there was intimate sexual contact, including digital penetration.

(Martinez Dep. at 42).[8]

        Plaintiff also asserts that, besides her best friend Michelle Boyd who knew of plaintiff's

relationship with Martinez because plaintiff told her, several teachers were aware that she was in

Martinez's classroom with the lights out, the door closed and the shades drawn, and other

teachers saw them going alone to his van and leaving the school premises.[9]  (Craig Dep. at 42-43;

57-58; 59; 65).

        Martinez was the coach of the girls' basketball team and, at his invitation, plaintiff

became the team statistician during her sophomore year.  (Craig Dep. at 66-67).  In that capacity,

---

        [6]  They apparently never had any contact during the summer breaks from school.

        [7]  This seems unlikely since Martinez was called out of his classroom around 7:30 a.m.,
before classes began.  He testified that his 14-year-old son was with him at the time.  (Martinez
Dep. at 112-13).

        [8]  This factual dispute is actually not material to the analysis here; given that plaintiff was
a minor, any physical contact was inappropriate.

        [9]  Martinez was aware of no Board policy prohibiting transporting of students by
employees in private vehicles.  (Martinez Dep. at 58).

(3:01 CV 7517)

she would travel to away games on the bus with the team, other coaches, and Martinez.  She alleges that they sat together, covered by a blanket, in plain sight of everyone on the bus, including other school personnel.  Inappropriate touching allegedly occurred during those trips and they often fell asleep leaning against each other.  (Id. at 66-68).  However, no one ever reported the behavior or took any steps to stop it.

Plaintiff alleges that, one day during her sophomore year, she was called out of class by Bruce Hodges, a counselor or truant officer at the school.[10]  (Craig Dep. at 60).  He indicated that a friend of plaintiff's had told him plaintiff was pregnant.  Hodges encouraged plaintiff to get a pregnancy test and personally took her to the Allen County Health Department for that purpose.[11]  (Id. at 61-62).  The test confirmed her pregnancy.

When plaintiff told Hodges that Martinez was the father and that she was afraid to tell her parents, she claims Hodges assured her it was okay because "girls get pregnant all the time" and "teachers have relationships all the time with students."  (Craig Dep. at 62-63).  She further claims that she and Hodges went to Martinez's classroom.  The three of them fabricated a story whereby, to protect Martinez, plaintiff would claim to be pregnant by a student named Josh.  (Id. at 63; 115).  Plaintiff subsequently had an abortion paid for by her mother.  (Id. at 117).

_____

[10]  The Board asserts, without support, that Hodges was not a Board employee.  However, as pointed out in plaintiff's brief in opposition to defendant's motion for summary judgment, his activities at the school suggest that he had enough authority to be deemed an agent of the Board.  (See Doc. No. 94 at 21-26).

[11]  Plaintiff states that Hodges asked a supervisor whether he could take plaintiff for the test and was told he could not take her out of class for that.  So, according to plaintiff, Hodges told her to skip her first class the next day and to meet him by his vehicle whereupon he would take her for the test.  She complied.  (Craig Dep. at 61-62).

(3:01 CV 7517)

Apparently, the relationship between plaintiff and Martinez was finally brought to light on or about September 25, 2000.  At the time, the Superintendent of Schools was John McEwan, who served in that capacity from July 2000 until June 2003, when his three-year contract was not renewed.  (McEwan Dep. at 6-7) (Doc. No. 56).[12]

Superintendent McEwan testified at his deposition that, on September 25, 2000, he was contacted by the Board President, Sandy Monfort, who told him that she had some "sensitive information" to pass on to him.  They met for lunch at a restaurant and Ms. Monfort told McEwan that, on September 24, 2000, a student had informed her of an affair between plaintiff and Martinez.  (McEwan Dep. at 8-11; Dep. Exh. 1).  In a memo which McEwan wrote for the file immediately after his conversation with Monfort, he noted that the student told Monfort that she may have copies of e-mails to prove her allegations.[13]  He further noted that the relationship "may have included consentual [sic] sex and a possible pregnancy & abortion."  (McEwan Dep. Exh.1).  This memo also mentions "a second possible affair by another employee . . . a former teacher named Bruce ? who has left the district's employment."  (Id.).  Finally, the memo noted that Craig's mother, who was also a district employee, knew about the pregnancy and abortion, but did not know the father's identity.  (Id.).

McEwan obtained a written statement from the student who had informed Monfort of the affair.  (McEwan Dep. at 15).  Although he did not remember whether he himself ever contacted

---

[12]  The deposition testimony actually states that McEwan was hired in July 2002 (McEwan Dep. at 6); however, an Errata Sheet (Doc. No. 69) corrected the date.

[13]  The student's name has been redacted from the memo and, at counsel's advice, McEwan did not reveal the name at his deposition, citing confidentiality.  (McEwan Dep. at 14).

(3:01 CV 7517)

Children's Services or the police department or whether he directed someone else to do that, he did confirm that no report was made until November 1, 2000.  (Id. at 16-17; 37).  At his deposition, McEwan was quite unclear about who, if anyone, initiated an investigation.  His testimony also suggests that he was quite disinterested in any investigation that may have been initiated by Allen County Children's Services, although, as a "mandated reporter" under the Ohio statute, he would have been entitled to followup on the investigation.  (Id. at 17-20).

On November 2, 2000, before school started, Martinez was called out of his classroom and taken to the office; eventually he ended up at the police station where, several hours later, he was arrested by the Lima City Police.  (Martinez Dep. at 112-13).  He never returned to his teaching post at Lima Senior High School.  (Id. at 115).  He received a letter from McEwan, dated November 6, 2000, stating that because he had been "accused of having a professionally unacceptable relationship with a student," he was "administratively reassign[ed]" to stay at home, available for telephone calls, during regular working hours.  The letter indicated that the assignment would "continue, with pay, until further notice."  The letter further informed Martinez that an investigation would be conducted and that he would be afforded a due process hearing.  (McEwan Dep., Exh. 4).

On December 5, 2000, McEwan was informed that the investigation by Allen County Children Services had substantiated the allegations of sexual abuse.  (McEwan Dep., Exh. 5).

Martinez resigned on June 11, 2001, shortly after pleading guilty to a misdemeanor charge of contributing to the delinquency of a minor.  (Id. at 117).  By letter dated June 27, 2001, the Board accepted his resignation.  (McEwan Dep., Exh. 6).  Also, "in lieu of formal

9

(3:01 CV 7517)

disciplinary proceedings[,]" on June 8, 2001, Martinez surrendered his license to teach "based upon **evidence of inappropriate relationships with students**.  (Doc. No. 94, Exh. 3, emphasis in original).

### III.  DISCUSSION

**A.  Motions re: Grand Jury Testimony (Doc. Nos. 61, 79)**

      The defendants have jointly moved to unseal and disclose the testimony of Christy Craig given before the grand jury in connection with the State's prosecution of Martinez.  (Doc. No. 61).  It is their belief that her grand jury testimony may contradict her deposition testimony and, if so, they argue that they should have access to the grand jury testimony for impeachment purposes and to challenge plaintiff's credibility.  Plaintiff's response (Doc. No. 79) is captioned as a "motion" to keep the testimony sealed and undisclosed.  Plaintiff argues that defendants are on a "fishing expedition" and that, since Martinez admitted inappropriate sexual contacts with the plaintiff, her grand jury testimony cannot be relevant, no matter what the testimony is.  In reply (Doc. No. 80), defendants assert that it is false to say Martinez has admitted <u>all</u> of the alleged behavior; in particular, he now denies ever having intercourse with the plaintiff and, therefore, denies that he impregnated her.[14]

---

    [14]  The Court notes, however, that the search warrant affidavit of Officer Jeffrey Kinkle, made before Judge Jeffrey Reed in the Allen County Court of Common Pleas, states that, on November 2, 2000, during an interview by the affiant, Martinez admitted having sexual intercourse with Craig in his classroom on two occasions, including October 9, 2000.  (Doc. No. 94, Exh. 4, p. 8).  At this point, this affidavit is arguably hearsay; however, it does inform the Court's analysis.

(continued...)

10

(3:01 CV 7517)

Prior to the filing of this motion, the Court received an unauthenticated and unsigned copy of an Order purportedly issued by the Court of Common Pleas of Allen County, Ohio, which permitted disclosure of the testimony for an *in camera* review by this court "and use as [this court] deems proper."  <u>See</u> Doc. No. 60.  This Order was accompanied by a copy of the transcript of the grand jury testimony of Christy Craig, which this Court ordered immediately placed under seal, having no idea why these materials had been provided.  (Seal #3625).  When defendants filed their motion, it then became clear why the transcript had been provided by the Court of Common Pleas.

Although the principle of grand jury secrecy is deeply ingrained in American legal jurisprudence, <u>United States v. Sells Engineering, Inc.</u>, 463 U.S. 418, 424 (1983), it is not absolute.  Under Ohio law, the secrecy of a grand jury proceeding must be preserved unless "the ends of justice require [disclosure] and there is a showing . . . that a particularized need for disclosure exists which outweighs the need for secrecy."  <u>State v. Stojetz</u>, 84 Ohio St.3d 452, 460 (1999) (quoting <u>State v. Greer</u>, 66 Ohio St.2d 139 (1981), Syllabus ¶ 2).

The determination of whether to disclose grand jury testimony is within the discretion of the trial court.  <u>Greer</u>, Syllabus ¶ 1.  Furthermore, a court may, where justice requires, order the disclosure of grand jury evidence in civil as well as criminal matters and the "particularized needs" test applies regardless of the type of case involved.  <u>Wurth v. Emro Marketing Co.</u>, 125

---

[14] (...continued)
The Court notes, as a general matter, that the phrases "sexual intercourse" and "sexual contact" are used practically interchangeably by the parties.  Of course, the distinction may become critical at some phase of these proceedings.

11

(3:01 CV 7517)

Ohio App.3d 494, 499 (1998) (citing Petition for Disclosure of Evidence, 63 Ohio St.2d 212

(1980)).  See also, United States v. Markwood, 48 F.3d 969, 984 (6th Cir. 1995) (if party desires

to obtain grand jury materials for civil use, it must make a showing of a particularized need for

the materials) (citing Sells Engineering, Inc., 463 U.S. at 445).

   The Court has reviewed *in camera* the grand jury testimony of Christy Craig, given on

December 12, 2000, when she was 16 years old, a little more than one month after Martinez was

arrested.  Given Martinez's own admissions that, at the very least, he engaged in inappropriate

sexual contact with the plaintiff (even if, for present purposes, he denies sexual intercourse), this

Court does not find the grand jury testimony of the plaintiff to be material to the question of

liability, although it might be relevant to damages.

   The Court has decided to bifurcate the trial into liability and damages phases.  Therefore,

since the grand jury testimony has relevance, if at all, only to the damages phase of the trial, at

this juncture the Court finds no "particularized need" for disclosure of the testimony.

   That having been said, however, the Court will entertain a renewed motion to unseal and

disclose the grand jury testimony when it reaches the damages phase of the trial.

   Defendants' motion to unseal and disclose the testimony (Doc. No. 61) is denied, without

prejudice to renewal prior to the damages phase of trial.  Plaintiff's related motion (Doc. No. 79)

is denied as moot, also without prejudice to renewal.

(3:01 CV 7517)

**B.  Motion to Strike (Doc. No. 73)**

   Plaintiff has filed a motion to strike Exhibit C attached to her deposition.  This is a copy of a police report that was used during the deposition to refresh plaintiff's recollection.  The Board has cited this report in the statement of facts set forth in its motion for partial summary judgment.  Plaintiff argues that use of this report is improper for summary judgment purposes.  However, in response, the Board points out that plaintiff herself produced this report to the Board during discovery.

   Plaintiff's motion (Doc. No. 73) is denied.

**C.  Cross-Motions for Summary Judgment (Doc. Nos. 66, 71)**

   Plaintiff's Fourth Amended Complaint (Doc. No. 65) sets forth the following nine causes of action:

  (1) a § 1983 claim against Martinez in his individual capacity for violating plaintiff's substantive fourteenth amendment right to be free from sexual abuse at the hands of a public school employee;

  (2) a § 1983 claim against the Board for its deliberate indifference to Martinez's violation of plaintiff's substantive fourteenth amendment right to be free from sexual abuse at the hands of a public school employee and for its official custom and policy of ignoring the same;

  (3) a Title IX claim against the Board for creating and/or permitting quid pro quo sexual harassment and a hostile educational environment;

  (4) a pendent state claim of negligence against the Board for its Superintendent's failure to report under Ohio Rev. Code § 2151.421;

13

(3:01 CV 7517)

    (5)    a pendent state claim of negligence against the Board for Martinez's failure to report under § 2151.421;[15]

    (6)    a pendent state claim of negligence against the Board for the Board President's failure to report under § 2151.421;

    (7)    a pendent state claim of negligence against the Board for Bruce Hodges's failure to report under § 2151.421;

    (8)    a § 1983 claim against the Board for its deliberate indifference, specifically between September 25, 2000 and November 2, 2000, to Martinez's violation of plaintiff's substantive fourteenth amendment right to be free from sexual abuse at the hands of a public school employee and for its official custom and policy of ignoring the same;

    (9)    a pendent state claim against the Board for wilful and reckless failure to supervise Martinez.

Plaintiff moves for summary judgment on her first, fourth, fifth and sixth causes of action.  Defendant Board moves for summary judgment on the second, third, fifth, seventh, eighth and ninth causes of action.  Therefore, between the two motions, all nine causes of action are covered.

---

[15] The Court notes that plaintiff's motion for partial summary judgment, at page 8ff, suggests that the fifth cause of action is brought against both Martinez and the Board.  However, the Court rejects this argument.  The fourth, fifth, sixth, and seventh causes of action are all pled in identical fashion, each one setting forth supporting factual allegations and each one ending with a paragraph that states that "Defendant Lima City Schools Board of Education, is liable for the failure of [the individual named in each count] to report pursuant to R.C. 2151.421 the known or suspected abuse . . . ."  The fifth cause of action does not also allege separately that Martinez is liable.  Although Martinez is the alleged wrong-doer, the fifth cause of action alleges only that the Board is liable for Martinez's wrongdoing (i.e., his failure to report the abuse he was perpetrating).  Similarly, the fourth cause of action alleges that the Board is liable for the superintendent's failure to report Martinez's abuse and the sixth cause of action alleges that the Board is liable for the Board President's failure to report Martinez's abuse.  The seventh cause of action makes a similar allegation with respect to the failure of Bruce Hodges to report; however, plaintiff has not moved for summary judgment on that cause of action.

(3:01 CV 7517)

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 .  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion."  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, 477 U.S. at 250.  Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

15

(3:01 CV 7517)

See also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he

conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material

fact that preclude the grant of summary judgment").


**(1)  FIRST CAUSE OF ACTION (§ 1983 against Martinez) (Doc. No. 66)**

Title 42, section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . . .

"[T]he right to be free from sexual abuse at the hands of a public school teacher is clearly

protected by the Due Process Clause of the Fourteenth Amendment." Doe v. Claiborne County,

Tenn., 103 F.3d 495, 506 (6th Cir. 1996).

Plaintiff moves for summary judgment on this claim against Martinez.  Martinez opposes

the motion, arguing only that there are material facts in dispute because plaintiff alleges that she

and Martinez engaged in sexual intercourse, whereas he denies ever having had intercourse with

plaintiff.

Martinez's argument is understandably weak.  He does not deny (and, in fact. admits)

that, while in his role as a public school teacher, he engaged in sexual conduct with the plaintiff

who was a minor at the time.  He admits touching, fondling, kissing (Martinez Dep. at 39),

sharing a blanket on the team bus (id. at 40), "sexual contact or sexual conduct with Christy

Craig on or about October the 9th of 2000," (id.), and digital penetration of plaintiff's vagina at

(3:01 CV 7517)

least once and perhaps twice (id. at 42).  Therefore, whether or not they engaged in sexual

intercourse is not relevant on the question of individual liability, even though it may be relevant

to damages.

The Court can perceive no reason to write more extensively with respect to this cause of

action.  Martinez does not, and cannot,[16] claim any qualified immunity; so that need not be

discussed.

There are no material facts in dispute with respect to plaintiff's claim that Martinez

violated her Fourteenth Amendment right to be free from sexual abuse at the hands of a public

school teacher.  Accordingly, plaintiff is entitled to summary judgment against Martinez, in his

individual capacity, on the issue of liability under the first cause of action.  The question of

damages will remain for trial.

Plaintiff's motion for partial summary judgment (Doc. No. 66) is GRANTED with

respect to the first cause of action.


**(2)  SECOND AND EIGHTH CAUSES OF ACTION (§ 1983 against the Board) (Doc. No. 71)**

In the second cause of action, plaintiff alleges that Martinez had a history of inappropriate

relationships with students (Doc. No. 65, ¶ 15) and that the Board "was deliberately indifferent to

students' Fourteenth Amendment right to be free from sexual abuse at the hands of a public

---

[16]  By the time Martinez was engaging in the relevant conduct, there was "a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity, . . . [which] right is fundamental[.]"  Doe v. Claiborne County, 103 F.3d at 507.

(3:01 CV 7517)

school employee by their official custom of ignoring the objective signs and symptoms of abuse and thereby failing to take action to reduce and eliminate the effects of and exposure of their students to abuse."  (Id., ¶ 18).  In the eighth cause of action, plaintiff alleges that specifically during the period beginning September 25, 2000 (when the Board President and the Superintendent became aware of the abuse) and November 2, 2000 (when Martinez was removed from school and arrested), the Board and its agents took no action to prevent the abuse, being "deliberately indifferent . . . to [her] bodily safety and right to be free from sexual abuse at the hands of a public school employee."  (Id., ¶ 53).  Plaintiff points out that it was during this precise time period that Martinez himself admits to having had digital penetration of the plaintiff's vagina at least once and possibly twice.

The Board moves for summary judgment on these causes of action, arguing that it cannot be held liable on a theory of *respondeat superior*, Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978), but that plaintiff must show the Board itself to be the wrongdoer.  Claiborne County, 103 F.3d at 507 (citing Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992)).  The Board argues that it cannot be found liable for its employees' behavior "unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right."  Claiborne County, 103 F.3d at 507 (citing Monell, 436 U.S. at 690-91).

Here, as in Claiborne County, plaintiff asserts that "section 1983 liability exists due to a 'custom,' which, although not officially adopted or established through the decision-making channels, led [Martinez] sexually abusing her."  103 F.3d at 507.  The "custom" which

18

(3:01 CV 7517)

plaintiff alleges is a failure to act to prevent sexual abuse; she further alleges that this failure to act resulted in an atmosphere where Martinez felt free to abuse her because he knew there would be no consequences.

> To establish Board liability on an "inaction" theory, plaintiff must establish:
>
> (1)  the existence of a clear and persistent pattern of sexual abuse by school employees;
>
> (2)  notice or constructive notice on the part of the School Board;
>
> (3)  the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4)  that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

Claiborne County, 103 F.3d at 508.  "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." Id.  "There is an analytical distinction between being deliberately indifferent as to one particular incident, and having a 'policy' of always being deliberately indifferent to unconstitutional actions." Id.

"If a plaintiff advances sufficient evidence to create a genuine issue of material fact as to the existence of such custom or policy, then the question of 'deliberate indifference' is one for the jury to decide and not for the court at the summary judgment stage."  Claiborne County, 103 F.3d at 509 (citing Hicks v. Frey, 992 F.2d 1450, 1456-57 (6th Cir. 1993)).

19

(3:01 CV 7517)

The Court has examined the record and the briefs of the parties with respect to these two causes of action and the Court concludes that there are material factual disputes for a jury to determine.

In her opposition brief, plaintiff advances evidence that, in the recent past, other students were abused by other employees and the Board's response was, *inter alia*, (1) to allow the employees to resign, providing neutral and/or favorable letters of recommendation to their subsequent employers; (2) to enter into settlement agreements with the employees, which included payment of retirement benefits and foregoing any reporting of the incidents to the legal authorities; and (3) to fail to institute corrective policies which would have prevented new instances of abuse (e.g., policies forbidding transporting of students in private vehicles or being alone with students in classrooms).  She also points out that this "custom" of tolerating inappropriate relationships was so accepted that teachers who saw her enter Martinez's classroom and who observed the closed door and darkened room, did nothing.  Teachers who saw her leaving school grounds in Martinez's van on a daily basis, did nothing.  Teachers and coaches who saw them cuddling under a blanket on the team bus and falling asleep on one another's shoulders, did nothing.  Finally, the custom was so accepted that, when the Superintendent learned of the abuse on or about September 25, 2000, he wrote a memo to the file referring to the abuse as "consensual sex."

It is possible, that none of these facts alleged by plaintiff would be believed by a jury.  It is equally possible that all or most of them would be believed and perceived to be a "custom" which emboldened Martinez and facilitated his behavior

20

(3:01 CV 7517)

The Court is unwilling to conclude that there is no possibility for liability on the part of the Board on the second and eighth causes of action.

Accordingly, the Board's motion for partial summary judgment (Doc. No. 71) on these two claims is denied.


**(3)  THIRD CAUSE OF ACTION (Title IX Claim against the Board) (Doc. No. 71)**

In this cause of action, plaintiff alleges that the Board violated Title IX when she was "subjected to un-welcomed sexual harassment in the form of sexual advances, actual sexual contact/conduct and other verbal or physical conduct of a sexual nature from her teacher" which "had the effect of un-reasonably interfering with her school performance and created an intimidating, hostile or offensive educational environment that affected seriously her psychological well-being," all during a time when "a school district official who had some authority to institute corrective measures on the district's behalf" and who "had actual notice of the teacher's conduct" was "deliberately indifferent thereto."  (Compl. ¶ 21).

The Board moves for summary judgment, arguing as it did for the § 1983 claims that it cannot be liable on a *respondeat superior* theory.  The Board asserts that plaintiff took great pains to keep her affair with Martinez a secret, that she never complained to any school employee, and that it simply had no knowledge of Martinez's behavior.

Title IX provides, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial

21

(3:01 CV 7517)

assistance[.]"  20 U.S.C. § 1681.  Title IX is enforceable through a judicially implied private

right of action, through which monetary damages are available.  See Gebser v. Lago Vista Indep.

Sch. Dist., 524 U.S. 274, 280, 284 (1998).

> The Gebser Court rejected vicarious liability and constructive notice as a basis for Title

IX liability.  To proceed on a Title IX claim against a board of education, the plaintiff must show

> > that: 1) she was subjected to *quid pro quo* sexual harassment or a sexually hostile
> > environment; b) [sic] she provided actual notice of the situation to an "appropriate
> > person," who was, at a minimum, an official of the educational entity with
> > authority to take corrective action and to end discrimination; and c) [sic] the
> > institution's response to the harassment amounted to "deliberate indifference."
> > See Morse v. Regents of the Univ. of Colorado, 154 F.3d 1124, 1127-28 (10th
> > Cir.1998) (citing Gebser, 524 U.S. at 289-91, 118 S.Ct. 1989).

Klemencic v. Ohio State University, 263 F.3d 504, 510 (6th Cir. 2001).

> This claim is much like the § 1983 claims in that there is a material factual dispute as to

what the Board and/or its agents knew and when and as to whether it was deliberately indifferent.

> > In order for the School District to be liable for acting with deliberate indifference,
> > Plaintiff must demonstrate by a preponderance of the evidence that the School
> > District had actual knowledge of prior facts to which it responded unreasonably.
> > Plaintiff must prove by a preponderance of the evidence that its response to the
> > abuse, or lack thereof is clearly unreasonable in light of known circumstances.  No
> > one particular response is required.  A school district's duty to respond may be
> > sparked once it is alerted to the possibility of a sexual abuse.  If the school district
> > takes timely measures to end a substantial risk of abuse, it is not deliberately
> > indifferent [if] such measures are not clearly unreasonable.

Williams ex rel. Hart v. Paint Valley Local School Dist., 400 F.3d 360, 364 (6th Cir. 2005);  see

also Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999) (a plaintiff may

demonstrate defendant's deliberate indifference to discrimination "only where the recipient's

22

(3:01 CV 7517)

response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances").

Plaintiff argues here that, at the very least, the response of the Board, through its President and the Superintendent, was clearly unreasonable between September 24, 2000 when Martinez's behavior was reported by another student and November 1, 2000 when the behavior was reported to the authorities.  Plaintiff alleges that the Board's inaction during that time period gave Martinez continued opportunity to abuse her and, in fact, that the one instance of digital penetration of her vagina which Martinez admits occurred within that time frame.

The Court is of the view that there are material factual disputes relating to this claim which preclude summary judgment.  Therefore, defendant Board's motion for summary judgment (Doc. No. 71) on this cause of action is denied.

**(4)  FOURTH AND FIFTH CAUSES OF ACTION (Negligence against the Board for Failure to Report under Ohio Rev. Code § 2151.421) (Doc. No. 66; Doc. No. 71)**

**and SIXTH CAUSE OF ACTION (Negligence against the Board for Failure to Report under Ohio Rev. Code § 2151.421 (Doc. No. 66)**

**and SEVENTH CAUSE OF ACTION (Negligence against the Board for Failure to Report under Ohio Rev. Code § 2151.421 (Doc. No. 71)**

These four causes of action are essentially the same: plaintiff asserts that the Board is liable for the failure of its various employees, all of whom are mandatory reporters, to report the abuse under Ohio Rev. Code § 2151.421.  The fourth cause of action specifically mentions the Superintendent's failure to report; the fifth cause of action specifically mentions Martinez's

23

(3:01 CV 7517)

failure; the sixth mentions the Board President's failure; and the seventh mentions Bruce Hodges' failure.

The Board moves for summary judgment on the fourth, fifth and seventh causes of action arguing: (1) that this Court should decline to exercise its supplemental jurisdiction over all of these claims; (2) that the Board cannot be liable under the fifth claim for Martinez's failure to report his own abuse of the plaintiff; (3) that, since Bruce Hodges was not its employee, the Board cannot be liable for Hodges' failure to report; and (4) that, under Ohio Rev. Code § 2744.01(A)(1), the Board is entitled, in any event, to immunity from suit for these intentional torts (including the ninth cause of action discussed infra).

Plaintiff moves for summary judgment on the fourth, fifth and sixth causes of action.

This case has been pending since September 26, 2001.  This Court will not now decline to exercise its supplemental jurisdiction, as urged by the Board.  Therefore, that ground for summary judgment is rejected.

As for the fifth cause of action, although plaintiff treats this as if it is levied against both Martinez individually and the Board, as already explained above, the Court construes the complaint as bringing this claim only against the Board.  The Court finds well-taken the Board's argument that it cannot be liable for Martinez's failure to report his own abuse of the plaintiff.  It goes without saying that, for purposes of Board liability, it is a ridiculous proposition that an abuser would report himself.

24

(3:01 CV 7517)

As for the seventh cause of action, there is a factual dispute as to whether Hodges was the Board's employee or agent.  The Board declares that he was not its employee but provides no proof of this which might entitle it to summary judgment.

As for the argument that immunity attaches to all of these claims, the Court finds that argument not well-taken.  Generally speaking, under Ohio Rev. Code § 2744.02(A)(1), a political subdivision such as the Board, "is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." There are exceptions to this rule set forth in § 2744.02(B).

Citing an unpublished case from an Ohio court of appeals, the Board argues that courts have consistently held that political subdivisions are immune from suits for intentional torts. However, in Campbell v. Burton, 92 Ohio St.3d 336 (2001), Syllabus ¶ 2, the Ohio Supreme Court held that "[p]ursuant to R.C. 2744.02(B)(5) [an exception to the general rule], a political subdivision may be held liable for failure to perform a duty expressly imposed by R.C. 2151.421."  In the opinion, the Court further clarified that the political subdivision could be held liable for its employee's failure to perform the duty imposed by § 2151.421.  Id. at 343.

Accordingly, there is potential for liability under these claims if plaintiff establishes that, indeed, an employee of the Board actually failed to report.

In light of the above, the Court concludes that no claim can be brought against the Board for Martinez's own failure to report.  To that extent both motions for summary judgment are

25

(3:01 CV 7517)

denied on that claim; however, the Court *sua sponte* dismisses the fifth cause of action for failure to state a claim.

As for the fourth, sixth and seventh causes of action, the Court concludes that there are facts in dispute as to who were employees of the Board and as to whether or not they reported any abuse.  The latter question is a close call, but one that the Court concludes should be made by a fact-finder.  Accordingly, as to the fourth, sixth and seventh cause of action, both motions are denied.


**(5)  NINTH CAUSE OF ACTION (Intentional Tort against the Board for Failure to Supervise) (Doc. No. 71)**

In her ninth cause of action, plaintiff alleges that the Board willfully and recklessly failed in its duty to supervise Martinez while he was on school property and in the performance of his school duties, including extracurricular duties.  (Doc. No. 65, ¶¶  59-60).

The Board moves for summary judgment on this intentional tort claim.  It argues that the Court should not exercise its supplemental jurisdiction, but that, in any event, under Ohio Rev. Code § 2744.02, it is a "political subdivision" which enjoys immunity from intentional tort suits for damages.

The Court finds the Board's argument to be well-taken.  Unlike claims four, six and seven, there is not independent statutory duty which provides the basis for an exception to the general rule with respect to this ninth cause of action.

Accordingly, the Board's motion (Doc. No. 71) is granted as to this claim.

26

(3:01 CV 7517)

## IV.  CONCLUSION

For the reasons discussed above:

--   Doc. No. 61, defendants' motion to unseal and disclose grand jury testimony, is underline denied without prejudice to renewal at the damages phase of trial.

--   Doc. No. 79, plaintiff's motion to keep grand jury testimony sealed and undisclosed, is underline denied as moot.

--   Doc. No. 73, plaintiff's motion to strike exhibit, is underline denied.

--   Doc. No. 66, plaintiff's motion for partial summary judgment, is underline granted in part and denied in part as follows:

   -- granted with respect to the **first** cause of action (against  defendant Martinez);
   -- denied with respect to the **fourth** and **sixth** causes of action;
   -- denied as to the **fifth** cause of action, but that cause of action is *sua sponte* dismissed for failure to state a claim.

--   Doc. No. 71, defendant Board's motion for partial summary judgment is underline granted in part and denied in part as follows:

   -- denied with respect to the **second** and **eighth** causes of action;
   -- denied with respect to the **third** cause of action;
   -- denied with respect to the **fourth**, **sixth** and **seventh** causes of action;
   -- denied as to the **fifth** cause of action, but that cause of action is *sua sponte* dismissed for failure to state a claim;
   -- granted with respect to the **ninth** cause of action.

In sum, what remains for trial is the question of damages only as to the first cause of action, plus the question of both liability and damages with respect to the second, third, fourth, sixth, and seventh causes of action.  The fifth cause of action is *sua sponte* dismissed for failure to state a claim and summary judgment is granted in favor of the defendants on the ninth cause of action.

(3:01 CV 7517)

## V. SUBSEQUENT PROCEEDINGS

This case remains on the standby trial list for the two-week period beginning Tuesday, October 11, 2005, with jury impanelment on Friday, October 7, 2005.  The Court will conduct a final pre-trial conference on Wednesday, September 7, 2005 at 10:30 a.m. in Toledo, followed by a settlement conference conducted by Magistrate Judge Vernelis Armstrong at 11:15 a.m.

IT IS SO ORDERED.

  August 31, 2005                              *s/ David D. Dowd, Jr.*
Date                                         David D. Dowd, Jr.
                                             U.S. District Judge

28